# STATE OF MICHIGAN

# COURT OF APPEALS

PEOPLE OF THE STATE OF MICHIGAN,

        Plaintiff-Appellee,

v

ROBERT GIVENS,

        Defendant-Appellant.

UNPUBLISHED
October 10, 2017

No.  331999
Wayne Circuit Court
LC No.  15-008329-01-FC

Before:  GLEICHER, P.J., and FORT HOOD and SWARTZLE, JJ.

PER CURIAM.

Defendant shot his friend, Oliver Weddington, then stalked and shot at three teenaged girls.  A jury convicted defendant of four counts of assault with intent to do great bodily harm less than murder, MCL 750.84, carrying a concealed weapon (CCW), MCL 750.227(2), felon in possession of a firearm, MCL 750.224f, and possession of a firearm during the commission of a felony, MCL 750.227b.  Defendant raises several meritless challenges to the admission of certain evidence against him, the absence of other evidence and a res gestae witness, and the sufficiency of the evidence supporting his convictions.  However, defendant aptly contends that the trial court erroneously assessed 25 points for two offense variables, improperly increasing his minimum sentencing guidelines range.  We affirm defendant's convictions, but vacate his sentences and remand for resentencing.

## I. BACKGROUND

One evening in September 2015, 20-year-old Monika Ceccarelli brought three teenaged friends, Amia Dansby, Takya Gadison and Kaniya Smith, to a Detroit party.  The four young women lived in Lapeer and Flint.  Once in Detroit, the women picked up Ceccarelli's boyfriend, Oliver Weddington.  They then drove around the corner to meet some of Weddington's friends.  Defendant was introduced as Weddington's best friend and identified as "Freaky Rob."  Defendant joined the group, took over as the driver of Ceccarelli's vehicle, and drove to a party.  The party was not as advertised and the young women wanted to leave, but defendant had Ceccarelli's keys.  Eventually, the women convinced defendant to return to the car and drive them to a fast food restaurant.  Before driving off, defendant asked another man for a "gun for protection."

Defendant was not happy about leaving the party and made his feelings obvious.  After using the drive-through window at the restaurant, he tried to keep Dansby's change.  When she

-1-

argued with him, defendant "just snapped." As defendant drove back to the neighborhood where his own car was parked, he waved the gun in the air and yelled, swore, and threatened the women. Defendant parked near his car and exited Ceccarelli's vehicle. The women heard a gunshot and believed defendant shot toward their car. Weddington followed defendant and tried to calm him down. But the women heard another shot and saw Weddington fall to the ground. Ceccarelli rushed to Weddington's side. Dansby, Gadison, and Smith ran for their lives. Completely unfamiliar with their surroundings, the women dodged between houses and hid. Ceccarelli testified that defendant took her car, threatening that he was going to search for and kill her young friends so they could not "snitch." From their hiding spot, the three women saw defendant nearby and were afraid of being noticed. They ran off again. Defendant jumped out of the vehicle and fired several shots in their direction.

Dansby and Gadison became separated from Smith. They convinced someone to let them into his home. The man was fearful, however, and would not tell the women his real address to give the police. The women stayed in the home for the rest of the night, too afraid to leave. Smith found refuge and called a family member for help. She met her relatives at a gas station and they took her to the police station. In the morning, Smith was able to contact Dansby and Gadison and a police officer took Smith to retrieve them.

Once outside, the women noticed Ceccarelli's car parked in a nearby driveway. The home belonged to Weddington's uncle. The officer summoned Weddington and Ceccarelli outside, noticed an injury to Weddington's abdomen, and requested another officer take him to the hospital. Weddington had merely been grazed by the bullet and was quickly released. Two weeks later, officers showed Dansby, Gadison, Smith, and Ceccarelli photographic lineups. All four identified defendant as their assailant.

## II. WEDDINGTON'S FAILURE TO APPEAR

The prosecution listed Weddington as a prosecution witness, but he did not appear for trial. The court allowed the prosecution to delete Weddington from the witness list, but denied defendant's request to give a missing witness instruction that would have directed the jury to presume that Weddington possessed evidence detrimental to the prosecution. The court denied this request after finding that the prosecution used due diligence in attempting to serve Weddington's summons.

"We review a trial court's determination of due diligence and the appropriateness of a 'missing witness' instruction for an abuse of discretion." *People v Eccles*, 260 Mich App 379, 389; 677 NW2d 76 (2004). An abuse of discretion occurs if the trial court's decision is outside the range of "reasonable and principled" outcomes, *People v Carnicom*, 272 Mich App 614, 616-617; 727 NW2d 399 (2006), or if the trial court commits an error of law. *People v Giovannini*, 271 Mich App 409, 417; 722 NW2d 237 (2006).

The trial court approached the missing witness situation improperly. At one time, MCL 767.40a provided that the prosecutor was "obliged by law to call" res gestae witnesses. The statute "was interpreted to require the prosecutor to use due diligence to endorse and produce all res gestae witnesses." *People v Burwick*, 450 Mich 281, 287; 537 NW2d 813 (1995). Thus, in *People v Pearson*, 404 Mich 698, 721; 273 NW2d 856 (1979) (citations omitted), the Court held:

If the question of a missing res gestae witness is raised during the course of trial, it is our opinion that the court should hold a hearing and decide first whether the witness is in fact a res gestae witness. If it is determined that the person is a res gestae witness, the court should order the prosecution to produce him or her. If the witness is not produced, then the court should hold a hearing on the issue of whether the prosecution was duly diligent in its attempts to produce the witness.

MCL 767.40a was amended by 1986 PA 46. It now provides that the prosecutor must list the names of known res gestae witnesses with the information. MCL 767.40a(1). At least 30 days before trial, the prosecutor must give the defendant a list of the witnesses to be produced at trial. MCL 767.40a(3). The prosecutor may delete a witness from the list "at any time upon leave of the court and for good cause shown or by stipulation of the parties." MCL 767.40a(4). In light of this amendment, "[t]he prosecutor's only burden of production is to produce those witnesses it intends to call, a list that can be amended on good cause shown, *at any time*"; amendment of the witness list is not conditioned on a showing of prior due diligence. *Burwick*, 450 Mich at 292-293 (emphasis in original). Thus, as held in *People v Cook*, 266 Mich App 290, 295-296; 702 NW2d 613 (2005) (emphasis in original), "*Pearson* is no longer good law" and "an evidentiary hearing is no longer *required* simply because the prosecution did not produce a res gestae witness."

Because Weddington's prior testimony was not introduced at trial,[1] the issue is not whether the prosecutor exercised due diligence to produce Weddington, but whether good cause existed for deleting Weddington from the prosecution's witness list. Although the trial court erred in considering whether due diligence was shown, we will not reverse where the trial court reaches the right result for the wrong reason. *People v Lyon,* 227 Mich App 599, 612-613; 577 NW2d 124 (1998).

Whether to allow the prosecutor to delete a listed witness is a matter within the trial court's discretion. *Burwick*, 450 Mich at 291. As noted, the prosecutor must demonstrate "good cause" for deleting the witness. MCL 767.40a(4). "Good cause" has been defined as "a legally sufficient or substantial reason," *In re Utrera*, 281 Mich App 1, 10-11; 761 NW2d 253 (2008) (quotation marks and citation omitted), and as a "satisfactory, sound or valid reason." *People v Buie*, 491 Mich 294, 319; 817 NW2d 33 (2012) (quotation marks and citation omitted). "Forgetting to contact or subpoena a witness," for example, "is likely not 'good cause.' " *People v Duenaz*, 306 Mich App 85, 104; 854 NW2d 531 (2014). The missing-witness instruction should be given if the prosecutor "fails to secure the presence at trial of a listed witness who has not been properly excused." *People v Perez*, 469 Mich 415, 420; 670 NW2d 655 (2003).

---

[1] Defendant's reliance on cases such as *People v Dye*, 431 Mich 58; 427 NW2d 501 (1988), and *People v Bean*, 457 Mich 677; 580 NW2d 390 (1998), is misplaced. Those cases involved the introduction of an unavailable witness's prior testimony. The prosecutor made no attempt to introduce Weddington's testimony from any prior proceeding.

The evidence showed that Weddington was cooperative until he was informed of the trial date. He then vacated his house and disconnected his phone. He moved in with his mother, who stopped taking the officer's calls once she learned why he was looking for her son. Weddington also avoided a meeting with his probation officer, knowing the investigating police officer was trying to find him to testify at this trial. The trial court concluded that Weddington was purposefully evading service. The inability to locate and subpoena a witness who is evading service is a satisfactory reason for deleting that witness from the witness list. Because the prosecutor showed good cause for deleting Weddington, the trial court did not abuse its discretion in declining to give the missing-witness instruction.

## III. WEDDINGTON'S MEDICAL RECORDS

Both through appellate counsel and in a pro se brief filed pursuant to Supreme Court Administrative Order No. 2004-6, Standard 4, defendant argues that the trial court erred in admitting Weddington's medical records into evidence because they contained inadmissible hearsay. Defendant opposed the admission of the records on both hearsay and confrontation grounds. We review for an abuse of discretion a preserved challenge to the admission of evidence. *People v Lukity*, 460 Mich 484, 488; 596 NW2d 607 (1999). "[W]hether the admission of evidence would violate a defendant's constitutional right of confrontation is a question of law that that we review de novo." *People v Dinardo*, 290 Mich App 280, 287; 801 NW2d 73 (2010).

Hearsay is defined as "a statement, other than the one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted." MRE 801(c). Hearsay is not admissible unless the rules of evidence provide otherwise. MRE 802. MRE 803(4) creates an exception for "[s]tatements made for purposes of medical treatment or medical diagnosis in connection with treatment and describing . . . the inception or general character of the cause or external source [of an injury] insofar as reasonably necessary to such diagnosis and treatment." "Statements made for the purpose of medical treatment are admissible pursuant to MRE 803(4) if they were reasonably necessary for diagnosis and treatment and if the declarant had a self-interested motivation to be truthful in order to receive proper medical care." *People v Mahone*, 294 Mich App 208, 214-215; 816 NW2d 436 (2011).

The medical records note that Weddington reported that he was shot at the previous night and a ricocheting bullet grazed his abdomen. The statement described "the inception or general character of the cause or external source" of his injury. Defendant does not contend otherwise, but argues that the statements were not "reasonably necessary" for Weddington's diagnosis and treatment because he did not voluntarily seek treatment, but was "compelled" to obtain it. MRE 803(4) does not contain a voluntariness requirement, and defendant fails to cite any authority in support of his claim. Therefore, we reject defendant's argument that the statements in the medical records were inadmissible hearsay.

And given the strength of the evidence against defendant, we need not determine whether the admission of the medical records violated defendant's right to confront the witnesses against him. In all criminal trials, the defendant has a right to be confronted by witnesses against him. US Const, Am VI; Const 1963, art 1, § 20. The Confrontation Clause bars the introduction of out-of-court statements that are testimonial in nature unless the witness is unavailable and the

defendant had a prior opportunity to cross-examine him. *Crawford v Washington*, 541 US 36, 59; 124 S Ct 1354; 158 L Ed 2d 177 (2004). A statement is testimonial if its "primary purpose . . . is to establish or prove past events potentially relevant to later criminal prosecution." *Davis v Washington*, 547 US 813, 822; 126 S Ct 2266; 165 L Ed 2d 224 (2006). The parties dispute whether Weddington's statement in the medical record was testimonial. We need not decide this question as any error was harmless, i.e., "it is clear, beyond a reasonable doubt, that the jury verdict would have been the same absent the error." *People v Shepherd*, 472 Mich 343, 348; 697 NW2d 144 (2005) (quotation marks and citation omitted).

There was abundant evidence that Weddington had been shot in the abdomen apart from his statements to hospital staff. Ceccarelli, Dansby, Gadison, and Smith all testified that they saw defendant shoot Weddington and saw Weddington fall to the ground. Ceccarelli went to Weddington's side and observed that he had been hit in the abdomen. Detroit Police Officer Dorethy Robinson testified that Weddington had an injury to his abdomen, and a photograph of the gunshot wound was admitted into evidence. Weddington's statement was cumulative to this already exhaustive evidence. It is therefore clear that the jury would have found defendant guilty of assault with intent to do great bodily harm as to Weddington even if the medical records had not been admitted. Any error was harmless.[2]

## IV. OTHER-ACTS EVIDENCE

Defendant next argues that the trial court erred in admitting evidence that he had been arrested for CCW in June 2015, when a gun was found in his car during a traffic stop. Defendant objected to the admission of this evidence under MRE 404(b). We therefore apply the abuse-of-discretion standard to the trial court's decision. *Lukity*, 460 Mich at 488.

Other-acts evidence is not admissible if its only purpose is "to prove the character of a person in order to show action in conformity therewith." MRE 404(b)(1). The rule does not prohibit all other-acts evidence that risks an improper character-to-conduct inference; rather, it prohibits evidence if that is the *only* purpose for which it is offered. *People v Jackson*, 498 Mich 246, 259; 869 NW2d 253 (2015). Other-acts evidence is admissible for other purposes, "such as proof of motive, opportunity, intent, preparation, scheme, plan or system in doing an act, knowledge, identity, or absence of mistake or accident[.]" MRE 404(b)(1). This is "a nonexhaustive list of reasons to properly admit" other-acts evidence. *Jackson*, 498 Mich at 259 (quotation marks and citation omitted). Once a proper purpose has been identified, "[t]he trial court must still determine whether the evidence, under a proper theory," is relevant, i.e., "has a tendency to make the existence of a fact of consequence in the case more or less probable than it would be without the evidence." *People v Sabin (After Remand)*, 463 Mich 43, 60; 614 NW2d 888 (2000). To be admissible, other-acts evidence must meet three requirements: (1) it must be

---

[2] Defendant also asserts that his trial counsel did not review the subject records, rendering his assistance ineffective. This contention is directly contrary to defense counsel's statements on the record. And contrary to defendant's insistence, counsel had no reason to interview the emergency room physician who treated Weddington as there is no record suggestion that the doctor could have provided any additional evidence, let alone evidence beneficial to the defense.

offered for a proper purpose; (2) it must be relevant; and (3) its probative value must not be substantially outweighed by the danger of unfair prejudice. *People v Knox*, 469 Mich 502, 509; 674 NW2d 366 (2004).

The trial court found that evidence of defendant's June 2015 CCW arrest was offered for proper purposes unrelated to defendant's propensity to commit crimes. One purpose was to show that "defendant likely had access to handguns" around the time of the charged offenses and thus "had the means and opportunity" to commit the crime. Opportunity is a proper purpose under MRE 404(b)(1). "Evidence of a defendant's possession of a weapon of the kind used in the offense with which he is charged is routinely determined by courts to be direct, relevant evidence of his commission of that offense," and such evidence is not precluded by MRE 404(b). *People v Hall*, 433 Mich 573, 580, 584; 447 NW2d 580 (1989). However, the trial court admitted the evidence without resolving a necessary issue of fact. Defense counsel asserted that defendant no longer had the gun found in his car in June as it had been confiscated by the police. And the witnesses testified that the gun allegedly possessed by defendant three months later during the current offense was borrowed from a friend. Because defendant no longer possessed the gun found in his car in June, evidence of his June CCW arrest was not truly relevant to establish "means and opportunity."

The court also found the evidence admissible to show that defendant "has knowledge as to what handguns are and how they're used." While knowledge is a proper purpose under MRE 404(b)(1), defendant's familiarity with handguns was not relevant to any fact in issue. The issues in this case were (1) whether defendant was armed with a gun as the witnesses had testified even though a gun was never recovered, (2) whether defendant shot at the victims, and (3) if defendant did shoot at the victims, whether he intended to murder them or commit great bodily harm. Defendant never claimed that he possessed an unfamiliar object or that he possessed a gun, but did not know that it would fire bullets. Whether defendant was familiar with guns would not make it more or less likely that he possessed a gun on the date of the incident, or used a gun in an attempt to kill or harm anyone. At best, the evidence showed only defendant's propensity to possess guns. Accordingly, the trial court abused its discretion in admitting this evidence.

The prosecutor now contends that the evidence was admissible to show absence of mistake. Absence of mistake is a proper purpose under MRE 404(b)(1) "when the same is material[.]" Smith testified that after defendant shot Weddington, his "eyes got big, like, you know he messed up by doing that" or "like he didn't expect that[.]" Smith did not testify that she perceived defendant as shooting Weddington by accident; rather, she described that defendant seemed to immediately regret his action. In any event, that defendant possessed a gun three months earlier had no tendency to show whether the shooting was accidental. The evidence simply showed defendant's propensity for possessing guns, the exact implication that MRE 404(b) protects against.

The improper admission of this evidence was harmless, however, and a new trial is not warranted. The erroneous admission of evidence justifies reversal only if it is more probable than not that it determined the outcome of the case. *Lukity*, 460 Mich at 493-496. An error is outcome determinative "if it undermine[s] the reliability of the verdict . . . in light of the untainted evidence. *People v Whittaker*, 465 Mich 422, 427; 635 NW2d 687 (2001).

Significant admissible evidence established that defendant possessed a gun and shot at Weddington, Dansby, Gadison, and Smith on the night in question. Dansby, Gadison, Smith, and Ceccarelli all gave similar testimony about the events of that night. They all described that "Freaky Rob" became upset over having to leave a party and after Dansby argued with him over money. They testified that he waved the gun around, yelling at and threatening them. When Weddington tried to calm him down, defendant shot him. Dansby, Gadison, and Smith ran from the scene and hid in the surrounding neighborhood. Defendant then told Ceccarelli "that he wanted to find the girls" and kill them because he thought they "were gonna snitch or tell on him." Defendant used Ceccarelli's car to pursue and shoot at Dansby, Gadison, and Smith. Given this highly damaging evidence, the improper admission of defendant's June 2015 arrest was harmless.

## V. SUFFICIENCY OF THE EVIDENCE

In his in pro per brief, defendant challenges the sufficiency of the evidence supporting his convictions. We review de novo a challenge to the sufficiency of the evidence, "view[ing] the evidence in a light most favorable to the prosecution and determine if any rational trier of fact could have found that the essential elements of the crime were proven beyond a reasonable doubt." *People v Cline*, 276 Mich App 634, 642; 741 NW2d 563 (2007) (quotation marks and citation omitted). All conflicts in the evidence are resolved "in favor of the prosecution." *People v Blevins*, 314 Mich App 339, 357; 886 NW2d 456 (2016).

Ceccarelli, Dansby, Gadison, and Smith all testified that defendant possessed a gun. They agreed that after exiting the car, defendant pointed the gun at and then shot Weddington, and that he then attempted to shoot Dansby, Gadison, and Smith. Defendant does not dispute that this evidence, if believed, sufficed to prove the crimes charged. Rather, he argues that the witness testimony was incredible. However, "[w]itness credibility and the weight accorded to evidence is a question for the jury," *People v McGhee*, 268 Mich App 600, 624; 709 NW2d 595 (2005), and we "will not interfere with the role of the trier of fact of determining the weight of the evidence or the credibility of witnesses." *People v Hill*, 257 Mich App 126, 140-141; 667 NW2d 78 (2003). Although defendant laments the lack of scientific evidence in this case, "[a] complainant's eyewitness testimony, if believed by the trier of fact, is sufficient evidence to convict." *People v Newby*, 66 Mich App 400, 405; 239 NW2d 387 (1976). The prosecution is not required to produce physical evidence linking the defendant to the crime or otherwise corroborate that testimony. *Id*.; see also *People v Alexander*, 142 Mich App 231, 234; 370 NW2d 8 (1985).

In a related argument, defendant claims that his trial counsel was ineffective for failing to consult and present an expert to challenge the accuracy of the witnesses' "memory recollection." Defendant failed to preserve this challenge by requesting a new trial or evidentiary hearing and our review is limited to errors apparent on the existing record. *People v Lane*, 308 Mich App 38, 68; 862 NW2d 446 (2014). To establish ineffective assistance of counsel, "the defendant must show that (1) defense counsel's performance fell below an objective standard of reasonableness and (2) there is a reasonable probability that counsel's deficient performance prejudiced the defendant," meaning that "but for defense counsel's errors, the result of the proceeding would have been different." *Id*.

-7-

"An attorney's decision whether to retain witnesses, including expert witnesses, is a matter of trial strategy." *People v Payne*, 285 Mich App 181, 190; 774 NW2d 714 (2009). The record is devoid of information regarding whether defense counsel consulted an expert on "memory recollection." "The mere fact that such an expert was never called as a witness by the defense does not show that one was never consulted or retained." *People v Bass*, 317 Mich App 241, 279; 893 NW2d 140 (2016). In any event, defendant has not explained why memory-recollection testimony was necessary, i.e., to challenge the witnesses' identification testimony in particular or their memory of the events in general. On this record, we discern no error in counsel's decision-making.

## VI. PROSECUTOR'S PRESENTATION OF FALSE TESTIMONY

Defendant further argues that a new trial is required because the prosecutor knowingly presented false testimony at trial. A prosecutor may not knowingly use false testimony to obtain a conviction. *People v Smith*, 498 Mich 466, 475-476; 870 NW2d 299 (2015). "[A] conviction obtained through the knowing use of perjured testimony offends a defendant's due process protections guaranteed under the Fourteenth Amendment." *People v Aceval*, 282 Mich App 379, 389; 764 NW2d 285 (2009). A defendant is entitled to a new trial if uncorrected false testimony could have affected the outcome of the trial. *Smith*, 498 Mich at 476.

Defendant does not identify the testimony presented by the prosecutor that he deems false. Rather, defendant implies that the testimony of Ceccarelli, Dansby, Gadison, and Smith must have been false because each woman's trial testimony bore inconsistencies with her prior statements or testimony, or with the testimony of the other witnesses. Such discrepancies do not necessarily render testimony false; they simply create a credibility contest for the jury's resolution. Defense counsel used the witnesses' prior inconsistent statements to impeach their trial testimony. The record does not support this claim of error.

## VII. STATEMENTS DURING PHOTOGRAPHIC LINEUPS

Defendant complains that Officer Mathew Walker improperly testified regarding statements made by the witnesses when they identified defendant's photo in a photographic lineup. As the photographic lineup arrays and accompanying notes were shown to the jury, Walker read the notes aloud. Walker testified that Ceccarelli, Dansby, Gadison, and Smith all immediately selected defendant from the lineup. In relation to Gadison's identification, Walker read his note that "the viewer stated that's him I remember his face clearly." Walker recorded that Smith "stated oh that's him." Because defendant did not object to Walker's testimony at trial, this issue is unpreserved and our review is limited to plain error affecting defendant's substantial rights. *Knox*, 469 Mich at 508.

Gadison's and Smith's statements are excluded from the definition of hearsay as they were statements "of identification of a person made after perceiving the person." MRE 801(d)(1)(C). As such, the statements are not subject to the general prohibition against hearsay. MRE 802. The statements were highly relevant to establish defendant's identity as the shooter, which was a principal issue at trial. Moreover, although damaging, the statements were not unfairly prejudicial or calculated to inject considerations extraneous to the merits of the action. *People v Mills*, 450 Mich 61, 75; 537 NW2d 909 (1995), mod 450 Mich 1212 (1995); *People v*

*Cameron*, 291 Mich App 599, 611; 806 NW2d 371 (2011).  Therefore, the probative value of the statements was not substantially outweighed by the danger of unfair prejudice under MRE 403. Accordingly, the court properly admitted the challenged statements.

## VII. SCORING OF THE SENTENCING GUIDELINES

Defendant argues that the trial court erred in assessing points for OVs 4 and 10 of the sentencing guidelines.  "Under the sentencing guidelines, the circuit court's factual determinations are reviewed for clear error and must be supported by a preponderance of the evidence." *People v Hardy*, 494 Mich 430, 438; 835 NW2d 340 (2013).  "Whether the facts, as found, are adequate to satisfy the scoring conditions prescribed by statute, i.e., the application of the facts to the law, is a question of statutory interpretation, which an appellate court reviews de novo." *Id*.

OV 4 considers "psychological injury to a victim."  MCL 777.34(1).  A score of 10 points is authorized when "[s]erious psychological injury requiring professional treatment occurred to a victim."  MCL 777.34(1)(a).  The instructions provide that 10 points are to be scored "if the serious psychological injury may require professional treatment.  In making this determination, the fact that treatment has not been sought is not conclusive."  MCL 777.34(2).

The victims of defendant's crimes did not appear at sentencing and did not provide victim impact statements.  At sentencing, the prosecutor acknowledged that the substance of the victims' trial testimony was insufficient to support a 10-point score.  Dansby, Gadison, and Smith provided no testimony regarding any psychological impact the offenses had on them, besides feeling fear while the events were occurring.  The prosecutor argued, however, that the court could "infer" from "the testimony and . . . the emotional nature that the testimony was given, the crime, that that would have psychological effects on those witnesses, that they could seek that treatment or may need to seek that treatment[.]"  The trial court agreed and assessed 10 points for OV 4.  This was error.

There was no record evidence that a victim suffered an actual serious psychological injury as contemplated by MCL 777.34.  "The trial court may not simply assume that someone in the victim's position would have suffered psychological harm because MCL 777.34 requires that serious psychological injury '*occurred* to a victim.' " *People v Lockett*, 295 Mich App 165, 183; 814 NW2d 295 (2012) (emphasis in original).  The prosecutor expressly asked the court to make such assumptions and the court accepted the invitation.  No points should have been assessed.

OV 10 considers "exploitation of a vulnerable victim."  MCL 777.40(1).  The term "exploit" is defined as "to manipulate a victim for selfish or unethical purposes" and "vulnerability" is defined as "the readily apparent susceptibility of a victim to injury, physical restraint, persuasion, or temptation."  MCL 777.40(3)(b) and (c).  The court assessed 15 points, reflecting that "[p]redatory conduct was involved."  MCL 777.40(1)(a).  Predatory conduct is defined as "preoffense conduct directed at a victim . . . for the primary purpose of victimization." MCL 777.40(3)(a).  OV 10 only requires that the preoffense conduct be directed at the person who is ultimately victimized, not toward "one particular or specific victim[.]" *People v Huston*, 489 Mich 451, 458-560; 802 NW2d 261 (2011).  In addition, the victim need not suffer from "an inherent or personal vulnerability."  Rather, the victim's vulnerability can arise from "external

circumstances" and the defendant's predatory conduct alone "can establish or enhance the 'vulnerability' of a victim." *Id*. at 466-467.

The trial court found that defendant engaged in preoffense conduct by having Ceccarelli drive him around so he could find Dansby, Gadison, and Smith after they ran away. Although defendant used the car before he shot at Dansby, Gadison, and Smith, his use of the car was not preoffense conduct used to exploit a victim or render her vulnerable to attack. It was simply an expedient means for getting to his intended victims. Absent predatory conduct, the court should not have scored OV 10.

Defendant's total prior record variable score was 20, placing him in Level D. Defendant's total OV score was 95, placing him in Level VI.[3] The reduction of 25 OV points, reduces defendant's total OV score to 70 points and his OV Level to Level V. This change reduces defendant's recommended minimum sentencing guidelines range from 34 to 100 months to 29 to 85 months for a third-offense habitual offender. MCL 777.21(3)(b); MCL 777.65. Defendant's minimum sentence of eight years (96 months) exceeds the appropriate guidelines range. Accordingly, defendant is entitled to resentencing. *People v Biddles*, 316 Mich App 148, 156; 896 NW2d 461 (2016).

We affirm defendant's convictions, but vacate his sentences and remand for resentencing. We do not retain jurisdiction.

/s/ Elizabeth L. Gleicher
/s/ Karen M. Fort Hood
/s/ Brock A. Swartzle

---

[3] The court erroneously calculated defendant's total OV score at 90 points. This five-point error makes no difference to our analysis as a total OV score of 75 places a defendant in Level VI.